IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PNC BANK, N.A., )
)
        Plaintiff, )
)
     v. )     1:13-CV-304
)
NATURE'S PEARL CORPORATION, )
et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion for claim and delivery filed by the plaintiff, PNC Bank. (Doc. 73.) The Court will allow the motion in part to the extent PNC seeks prejudgment possession of certain inventory and equipment as to which PNC has met North Carolina's statutory requirements for claim and delivery. The Court will deny the motion to the extent PNC seeks prejudgment possession of accounts receivable and items that are more properly considered fixtures or not owned by the defendants.

In 2007, Nature's Pearl Corporation and PNC's predecessor[1] executed a promissory note, which was renewed and amended several times until 2011. (*See* Doc. 1-2.) To secure repayment of the note, Nature's Pearl executed a security agreement granting PNC a security interest in certain personal property, including all of Nature's

---

[1] RBC Bank executed the loan documents with Nature's Pearl. (*See, e.g.*, Doc. 1-2 at 2; Doc. 1-4 at 2.) In 2012, RBC and PNC merged, and PNC acquired all of RBC's assets, including the loan documents and interests in Nature's Pearl's property. (*See* Doc. 1 at ¶ 18; Doc. 1-8.)

Pearl's then-owned and after-acquired inventory, accounts, and equipment. (*See* Doc. 1-4 at 2-7.) PNC perfected its security interest in 2007 and filed a timely continuation statement to maintain perfection. (*See* Doc. 1-4 at 9-10.) Defendant Jerry Smith acted for Nature's Pearl as president in executing the note, security agreement, and various amendments to both, (*see, e.g.*, Doc. 1-2 at 4, 16; Doc. 1-4 at 7-8), and also executed a personal guaranty to secure repayment of all amounts Nature's Pearl owed. (Doc. 1-7.)

On May 12, 2013, PNC sued the defendants to recover approximately $4.5 million owed under the note. (*See* Doc. 1 at ¶ 28.) According to the complaint, Nature's Pearl defaulted on the note by failing to repay all principal and interest by July 27, 2012. (Doc. 1 at ¶¶ 16-17; *see also* Doc. 1-2 at 14.) PNC seeks payment of all outstanding amounts owed under the note and guaranty, (Doc. 1 at ¶¶ 24-35), and possession of certain property in which it has a perfected security interest. (Doc. 1 at ¶¶ 43-49.) On December 18, 2014, PNC filed this motion for claim and delivery, seeking an order granting it immediate possession of certain personal property owned by Nature's Pearl. (Doc. 73.)

Rule 64 of the Federal Rules of Civil Procedure makes available in federal actions certain prejudgment remedies, such as replevin, that are available under the law of the state where the district court sits. *See* Fed. R. Civ. P. 64. In North Carolina, a "plaintiff in an action to recover the possession of personal property may claim the immediate delivery of the property . . . at any time before the judgment in the principal action." N.C. Gen. Stat. § 1-472; *see also Weener Plastics, Inc. v. HNH Packaging, LLC*, 590 F. Supp. 2d 760, 764 (E.D.N.C. 2008) ("The North Carolina claim and delivery is essentially a statutory form of the common law action of replevin." (citation and internal

quotation marks omitted)); *Brown v. Cogdell*, 136 N.C. 32, 48 S.E. 515, 515 (1904) (noting that claim and delivery "is simply to obtain possession of the property before judgment, or security for its being forthcoming if the plaintiff obtains judgment").

As a prerequisite to seeking claim and delivery, a plaintiff must plead an underlying claim for recovery of the property. *See Weener Plastics*, 590 F. Supp. 2d at 764-65. A plaintiff must also file an affidavit stating:

(1) That the plaintiff is the owner of the property claimed . . . or is lawfully entitled to its possession by virtue of a special property therein . . . .

(2) That the property is wrongfully detained by the defendant.

(3) The alleged cause of the detention, according to [the plaintiff's] best knowledge, information and belief.

(4) That the property has not been taken for tax, assessment or fine . . . or [otherwise] seized . . . and,

(5) The actual value of the property.

N.C. Gen. Stat. § 1-473; *see also Weener Plastics*, 590 F. Supp. 2d at 765.

Here, Nature's Pearl does not dispute that PNC has pled an underlying claim for return of certain personal property in Nature's Pearl's possession. (*See* Doc. 1 at ¶¶ 43-49; Doc. 75 at 3-4; *see generally* Doc. 85.) Nor does it dispute that it borrowed money from PNC's predecessor, signed the promissory note and security agreement, and failed to repay the money it owes.[2] (*See generally* Doc. 85.) Instead, Nature's Pearl contends

---

[2] For example, in a footnote on page one of its brief, Nature's Pearl makes a perfunctory argument that PNC has no security interest in its inventory, equipment, or accounts receivable because the parties' 2011 Change in Terms Agreement granted PNC a security interest in certain real property and released all personal property. (*See* Doc. 85 at 1 n.1.) This argument lacks

3

that: (1) this Court should abstain from ruling on PNC's motion for claim and delivery, (Doc. 85 at 4-8); (2) a stay agreement bars PNC from seeking prejudgment possession of personal property, (Doc. 85 at 8-10); (3) there are several defects in PNC's Section 1-473 affidavit, (Doc. 85 at 10-17); and (4) it has certain defenses and counterclaims to PNC's underlying action. (Doc. 85 at 17-19.)

### I.  Abstention

Nature's Pearl contends that the Court should abstain from ruling on PNC's motion. (Doc. 85 at 4-8.) "[A]bstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Emp'rs Res. Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995) (citation and internal quotation marks omitted). Rule 64 explicitly allows federal courts to grant motions like the one made by PNC, in appropriate circumstances. Nature's Pearl cites no case where a federal court abstained from ruling on a motion for claim and delivery,[3] (*see* Doc. 85 at 4-8), and PNC has cited several cases where a federal court granted an order for claim and delivery under state law and Rule 64.[4]

---

merit, as the 2011 Agreement merely granted PNC an additional security interest in certain real property and did not alter the terms of the original security agreement. (*See* Doc. 92 at 2-3; Doc. 1-2 at 14-16; Doc. 85-2 at 2-3; *see also* Doc. 1-4 at 8.)

[3] Nature's Pearl relies on *Nationwide Tr. Serv. Inc. v. Lowenthal*, No. 1:10-CV-192-GCM, 2011 WL 1885634 (W.D.N.C. May 18, 2011), where the court abstained in a case involving title, mortgage, and foreclosure disputes. *See id.* at *1-3; (*see also* Doc. 85 at 4-5.) This is a different kind of case with different state interests at issue and different statutory procedures in place.

[4] (*See* Doc. 92 at 3-4 (citing *Weener Plastics*, 590 F. Supp. 2d 760, *Smith v. Prosser*, No. 12-2695 (DWF/JSM), 2013 WL 6407734 (D. Minn. Dec. 9, 2013) (order of Mayeron, M.J.), and

Nature's Pearl contends that the Court should abstain because the Court cannot follow the state court procedure involving a preliminary decision by the Clerk and a right of appeal to district or superior court. (Doc. 85 at 6-7 (citing N.C. Gen. Stat. §§ 1-474, -474.1).) This argument misses the point of that process in state court. In state court, the initial claim and delivery process before the Clerk typically occurs on short notice with some ex parte aspects, *see* N.C. Gen. Stat. §§ 1-474, -474.1, which is not the case here. Moreover, the appeal in state court is to "the district or superior court having jurisdiction of the principal action," *id.* § 1-474(a), so that the court overseeing the entire dispute can evaluate the motion. Here, the matter is before that court in the first instance.

Next, Nature's Pearl contends that the Court should abstain because it has no power to direct state officials to carry out the provisions of North Carolina's system governing prejudgment seizure of property. (Doc. 85 at 6-8.) This argument about enforcement of a claim and delivery order overstates the difficulties. While it may be more appropriate to require the U.S. Marshal rather than a county sheriff to seize the property and deliver it to PNC, this does not impede an order of claim and delivery. Marshals regularly execute on judgments and enforce court orders, and there is no reason that cannot be done here.

If Nature's Pearl were correct, then claim and delivery would be unavailable in any case in a federal court in North Carolina, a highly unlikely result given the provisions of Rule 64. Nature's Pearl has not presented any facts or circumstances specific to claim

---

*Verathon, Inc. v. DEX One Serv., Inc.*, No. 2:13-CV-205, 2013 WL 1627073 (S.D. Ohio Apr. 16, 2013).)

5

and delivery that would make abstention appropriate, and the Court does not find its arguments persuasive.

## II. Stay Agreement

Nature's Pearl next contends that PNC cannot seek prejudgment possession of personal property because the parties signed an agreement in which PNC agreed to stay foreclosing on certain property in exchange for the right to bring its claims in federal court. (Doc. 85 at 8-10; *see also* Doc. 86-1.) The stay agreement, by its terms, applies only to real property and fixtures, (*see* Doc. 86-1 at 2-3; *see also* Doc. 86 at ¶ 12; Doc. 92 at 4), and thus does not bar PNC's motion for claim and delivery to the extent PNC seeks possession of personal property.

## III. Section 1-473 Affidavit

PNC provided an affidavit from Marc Scafidi, Senior Vice President of PNC, in support of its motion. (*See* Doc. 74.) There is no dispute that Mr. Scafidi's affidavit satisfies the requirements in Section 1-473(2)-(4). Mr. Scafidi testified that Nature's Pearl "is wrongfully detaining" the property, which to his best knowledge is because Nature's Pearl "continues to use the [property] in its business operations," and that the property "has not been taken for tax, assessment or fine" or otherwise seized. (Doc. 74 at ¶¶ 8-9.) Nature's Pearl has not challenged the sufficiency of this testimony.

Nature's Pearl makes a number of perfunctory arguments that Mr. Scafidi's affidavit does not meet the requirements of Section 1-473(1) and (5) and that PNC seeks to obtain possession of items not subject to claim and delivery. (*See* Doc. 85 at 10-17.) Most of these arguments are not specific to claim and delivery and are not supported by

case law; "it is not this court's responsibility to research and construct [a party's] arguments." *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (alteration omitted). Moreover, many of its arguments are hardly more than attempts to add unnecessary complications to the simple and straightforward requirements of Section 1-473. For the reasons that follow, the Court finds Nature's Pearl's objections to be largely without merit and finds that PNC has met the requirements of Section 1-473 as to some of the property sought.

    1. "Personal property" recoverable under Section 1-472

A plaintiff may only recover personal property in an action for claim and delivery. *See* N.C. Gen. Stat. § 1-472. Nature's Pearl contends that the accounts receivable and equipment PNC seeks are not personal property and thus not recoverable. (Doc. 85 at 11-14.) Nature's Pearl cites no case for the proposition that accounts receivable are not personal property, and there is authority to the contrary. *See Dominion Bank, N.A. v. Wilson*, 867 F.2d 203, 204 (4th Cir. 1989). To the extent Nature's Pearl's argument is based on a perceived practical difficulty in effectuating the replevin of accounts receivable due to the property's alleged intangible quality, (*see* Doc. 85 at 11-12), that argument creates a difficulty where none exists. *See, e.g.*, *Amerisourcebergen Corp. v. Hood Med. Servs., Inc.*, No. 2:05-CV-794, 2005 WL 2230232, at *4 (S.D. Ohio Sept. 13, 2005) (order of Frost, M.J.) (instructing parties on how to carry out an order for claim and delivery of accounts receivable).

Nature's Pearl also maintains that some of the equipment in PNC's affidavit constitutes fixtures and is not recoverable under claim and delivery and that Nature's

7

Pearl does not own other listed equipment. (Doc. 85 at 12-14; *see also* Doc. 74-2 (listing equipment); Doc. 86 at ¶¶ 5-6, 10 (identifying equipment that are fixtures or not owned by Nature's Pearl).) Nature's Pearl has submitted an affidavit from Mr. Smith in support. (Doc. 86.) PNC agrees that it may not seek claim and delivery of equipment that is a fixture or is not owned by Nature's Pearl and does not challenge Mr. Smith's testimony to the extent it is specific. (*See* Doc. 92 at 8.) The fact that some equipment might be fixtures does not mean that PNC is not entitled to possession of other non-fixture equipment owned by Nature's Pearl.[5]

2. PNC's description of property under Section 1-473(1)

Nature's Pearl contends that PNC has not "particularly described" the inventory and accounts receivable as required by Section 1-473(1). (Doc. 85 at 14.) PNC's affidavit states that it "is lawfully entitled to possession" of "certain accounts receivable[], inventory and equipment owned by Nature's Pearl . . . and more particularly described in [the] Commercial Security Agreement dated July 27, 2007." (Doc. 74 at ¶¶ 3, 5.) The security agreement grants PNC a security interest in "All Inventory, . . . Accounts, [and] Equipment." (Doc. 74-1 at 2.)

The description in PNC's affidavit, supplemented by the loan documents, put Nature's Pearl on notice as to what property PNC seeks in its motion. Nature's Pearl has

---

[5] Mr. Smith testified that the following items of equipment are fixtures or not owned by Nature's Pearl: "all pieces of equipment designated . . . as the encapsulation line," "storage tanks not in service," "loading/unloading equipment, shaker screening system, dryers, and trailers," and "the skid steer, utility cart, lawnmower, and other implements." (Doc. 86 at ¶¶ 5-6, 10 (internal quotation marks omitted); *see also* Doc. 85 at 12-14; Doc. 74-2.) Thus, of the equipment PNC listed, PNC is entitled to possession of a mini-excavator, three forklifts, and 750 plastic bins. (*See* Doc. 74-2 at 3; *see also* Doc. 92 at 8.)

8

cited no authority for its contention that PNC's description of inventory and accounts receivable is insufficient. (*See* Doc. 85 at 14.) PNC correctly points out that the description in the security agreement satisfies N.C. Gen. Stat. § 25-9-108, which governs the sufficiency of a description of collateral in a security agreement. (Doc. 92 at 7); *see also* N.C. Gen. Stat. § 25-9-108(b)(2) (noting that listing collateral by category name reasonably identifies the collateral). While Section 1-473 does not adopt the UCC's rules for describing collateral in a security agreement, the fact that PNC's description in the security agreement "reasonably identifies" the collateral lends some support to the conclusion that the same description "particularly describe[s]" the collateral under Section 1-473, and Nature's Pearl has offered no authority to support its contrary position. (*See* Doc. 85 at 14.) Moreover, the term "inventory" has a common accepted meaning and is not ambiguous. *E.g.*, N.C. Gen. Stat. § 25-9-102(a)(48)(b), (d); Black's Law Dictionary 901-02 (9th ed. 2009) (defining "inventory" as "[r]aw materials or goods in stock").

    3. <u>PNC "is lawfully entitled to possession" under Section 1-473(1)</u>

Nature's Pearl asserts that Mr. Scafidi's affidavit is inadmissible or lacks foundation because Mr. Scafidi's statement that "PNC is lawfully entitled to possession of the Collateral by virtue of the security interest," (*see* Doc. 74 at ¶ 5), is "incompetent lay opinion testimony that draws an impermissible legal conclusion." (Doc. 85 at 14-16.) This argument lacks merit, as Mr. Scafidi did more than proffer the conclusory assertion that "PNC is lawfully entitled to possession" of Nature's Pearl's property. Rather, Mr. Scafidi testified that PNC is entitled to possession by virtue of a security interest granted

by Nature's Pearl in a security agreement, and he attached the note, security agreement, and financing statement. (*See* Doc. 74 at ¶¶ 3-7; Docs. 74-1 to 74-4.) Nature's Pearl has not disputed the loan documents Mr. Scafidi attached to his affidavit, which show without question that PNC is entitled to possession of the collateral.

Nature's Pearl also contends that Mr. Scafidi, as a non-attorney, is not qualified to testify to the validity of PNC's security interest or its entitlement to possession. (*See* Doc. 85 at 15-16.) Nature's Pearl has cited no authority to support its argument that a witness must be an attorney or expert to testify to a creditor's interest in property.

    4. The actual value of the property under Section 1-473(5)

In his affidavit, Mr. Scafidi testified that "[t]he actual value of the Collateral is $2,604,705.00 . . . based on a recent appraisal." (Doc. 74 at ¶ 10.) According to Mr. Scafidi, this amount represents the value of Nature's Pearl's inventory and equipment and does not include the value of Nature's Pearl's accounts receivable, which PNC did not have sufficient information to value. (Doc. 75 at ¶ 10 & n.3.) Nature's Pearl contends that PNC's statement of the actual value is insufficient because PNC did not attach the appraisal or state the value of the accounts receivable. (Doc. 85 at 16-17.)

As to the inventory and equipment, PNC has satisfied the requirement that it state the actual value of the property. (*See* Doc. 74 at ¶ 10); *see also* N.C. Gen. Stat. § 1-473(5). Nature's Pearl has cited no authority for its contention that PNC's statement is insufficient or that PNC must attach the appraisal it used to value the property. (*See* Doc. 85 at 16-17.) Nor does Nature's Pearl offer evidence disputing the value. *See Marine Ecology Sys., Inc. v. Spooners Creek Yacht Harbor, Inc.*, 40 N.C. App. 726, 727-28, 253

10

S.E.2d 613, 615 (1979) (stating that the movant's statement of actual value is not conclusive). Further, PNC's statement of value "is not an end in itself, but is the basis for the amount of the bond [PNC] must post to obtain an order of claim and delivery." *Weener Plastics*, 590 F. Supp. 2d at 767.

Mr. Scafidi admits that the actual value stated does not include the accounts receivable. This is required by the statute, and thus PNC has not met its burden under Section 1-473 as to the accounts. *See* N.C. Gen. Stat. § 1-473(5). As noted *supra*, the Court cannot set an appropriate bond without this evidence. The Court will deny PNC's motion seeking claim and delivery of Nature's Pearl's accounts receivable.

### IV. Nature's Pearl's Defenses and Counterclaim

Nature's Pearl raises several defenses and a counterclaim to PNC's underlying action for payment and possession. (*See* Doc. 85 at 2, 17-19.) These issues "can be decided only when the case is heard on its merits" and are not appropriate to decide in a motion for claim and delivery. *See Wachovia Bank & Trust Co., N.A. v. Smith*, 24 N.C. App. 133, 135, 210 S.E.2d 212, 213 (1974); *see also Weener Plastics*, 590 F. Supp. 2d at 763-68 (granting a motion for claim and delivery without reaching the non-movant's allegations that the movant breached the underlying agreements). Indeed, if Nature's Pearl were correct that, before granting PNC's motion, the Court must determine whether PNC breached the loan agreement or waived the right to declare a default, the bond required by Section 1-475 would be unnecessary. *See Marine Ecology*, 40 N.C. App. at 727, 253 S.E.2d at 615 (noting that the bond is for the defendant's protection if it is "shown that the plaintiff was not lawfully entitled to the property").

11

Finally, Nature's Pearl asserts that PNC filed its motion for claim and delivery in bad faith. (Doc. 85 at 19-20.) The facts it proffers do not support this argument, and in any event, this too appears to be a factual dispute that can only be resolved on the merits.

V.     **Conclusion**

PNC has satisfied North Carolina's statutory requirements for claim and delivery as to all of Nature's Pearl's inventory and certain equipment specified in the motion. The Court will issue an order of claim and delivery for that property up to the value of $2,482,705[6] after PNC files a bond in the amount of $4,965,410. The bond shall be substantially in the form attached hereto and any surety on the bond shall be approved by the Court. The Court shall issue an order of claim and delivery after it approves the bond. It is **ORDERED** that the motion for claim and delivery, (Doc. 73), is **ALLOWED** on the terms stated.

This the 16th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

[6] As noted *supra*, Mr. Scafidi testified that the actual value of the inventory and equipment was $2,604,705. (Doc. 74 at ¶ 10.) The Court has subtracted from that amount the value of the equipment to which Mr. Smith testified, without contradiction from PNC, either constituted fixtures or was not owned by Nature's Pearl. (*See* Doc. 85 at 12-13; Doc. 86 at ¶¶ 5-6, 10; Doc. 92 at 8.) The value of those pieces of equipment, which totals $122,000, can be found beside each item in the list of equipment attached to Mr. Scafidi's affidavit. (*See* Doc. 74-2 at 2-3.)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| PNC BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-304 |
| | ) | |
| NATURE'S PEARL CORPORATION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**BOND FOR CLAIM AND DELIVERY
PURSUANT TO N.C. GEN. STAT. § 1-475 AND
FEDERAL RULE OF CIVIL PROCEDURE 64**

PNC Bank, N.A. ("PNC"), as principal, and the undersigned surety do acknowledge ourselves bound in the amount of FOUR MILLION NINE HUNDRED SIXTY-FIVE THOUSAND FOUR HUNDRED TEN AND 00/100 DOLLARS ($4,965,410.00) for the return of the property identified herein to defendant Nature's Pearl Corporation ("Nature's Pearl"), with damages for its deterioration and detention, if such return is made. If for any cause return cannot be made, payment shall be made to Nature's Pearl of such sum as may be recovered against PNC for the value of the property at the time of the seizure, with interest thereon as damages for the seizure and detention. The property that is the subject of this bond is all of Nature's Pearl's inventory and the following equipment: a Kubota KX161-3 mini-excavator, three Toyota 7FGU15 forklifts, and 750 plastic bins.

PNC Bank, N.A.

_____

By: _____

Title: _____

Signed and acknowledged before me on _____ at

_____.

                                                                  _____

SURETY:

_____

Name: _____

By: _____

Title: _____

Signed and acknowledged before me on _____ at

_____.

                                                                   _____

Bond approved: _____

Date: _____